UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARCELINO MONTROND and<br>LINO MONTROND,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BROCKTON et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 22-cv-10886-DJC<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                              **March 7, 2023**

**I.       Introduction**

Plaintiffs Marcelino Montrond ("Marcelino") and Lino Montrond ("Lino") (collectively, "Plaintiffs") have filed this lawsuit *pro se* against the City of Brockton ("the City"), the City's Building Department Inspector James Casieri ("Casieri"), the City's attorney Aileen C. Bartlett ("Bartlett") and the Brockton Police Department (collectively, "Defendants") alleging a violation of their civil rights under the Fourth Amendment, perjury and pecuniary and emotional harm resulting from the condemnation and demolition of Marcelino's property.  D. 1.  Defendants have moved to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  D. 11.  For the reasons stated below, the Court ALLOWS the motion.

**II.      Standard of Review**

      **A.      Motion to Dismiss for Lack of Subject Matter Jurisdiction**

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) "[a]t the pleading

1

stage," dismissal "is appropriate only when the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003) (citation omitted).  As with a Fed. R. Civ. P. 12(b)(6) motion, the Court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citation omitted). Unlike a Rule 12(b)(6) motion, however, the Court may look beyond the pleadings to determine jurisdiction without converting the motion into a summary judgment motion.  Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002) (citations omitted).

      **B.**      <u>**Motion to Dismiss for Failure to State a Claim**</u>

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citation omitted).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id. (citation omitted). Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id. (citation omitted).  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

The Court remains mindful that *pro se* plaintiffs are entitled to a liberal reading of their allegations, no matter how unartfully pled. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Rodi v. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).

### III.   Factual Background

The Court draws the following factual allegations from the complaint, D. 1, and accepts them as true for the purpose of resolving the motion to dismiss.[1]

As alleged, Marcelino was the owner of a property located at 23 Mystic Street, Brockton, Massachusetts ("the Property"). D. 1 at 1–2. In the summer of 2015, Marcelino obtained permits from the Building Department to add an addition on the second floor of the Property and to remodel and add a four-season porch with windows, a roof and foundation. Id. ¶ 1. On or about March 3, 2016, Marcelino contacted the Police Department to remove a non-resident at the Property who broke a window with a sharp object and refused to leave. Id. ¶ 3. The responding officer did not appear to be interested in the disturbance and instead told Marcelino that it appeared the Property was being worked on without a permit. Id. The officer asked if he could go inside, and Marcelino refused. Id. The officer entered the Property anyway without a warrant. Id. The officer contacted the City's Building Department and Fire Department. Id. Firefighters entered the Property without a warrant by breaking all the doors. Id. The City shut off the electricity and water at the Property. Id. Marcelino's tenants were instructed to exit the

---

[1] Because the complaint refers to several documents without attaching them as exhibits, the Court also draws facts from copies of these documents attached as exhibits to Defendants' memorandum in support of their motion to dismiss, D. 12 at 16–50, the authenticity of which are not in dispute and/or were referenced in the complaint. See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (noting that some extrinsic documents, including "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; [and] . . . documents sufficiently referred to in the complaint," may be considered without converting a motion to dismiss into a motion for summary judgment) (alteration and omissions in original) (citation and internal quotation marks omitted).

Property immediately. Id. The next day, the City boarded up all the doors and windows of the Property. Id.

On March 7, 2016, Marcelino received a letter from the City's Board of Health ("the Board of Health") declaring the Property unfit for human habitation due to a lack of hot water, heat, electricity, smoke detectors, carbon monoxide alarms, working stoves, adequate means of egress and "structural defects that may expose the occupants to fire, burns, shocks, accidents or other dangers or impairment to health or safety." D. 12 at 24–25; see D. 1 ¶ 4. Marcelino immediately repaired the new foundation structure and obtained a letter from a licensed engineer indicating that the Property was safe and that repairs could be made to meet the Massachusetts building code. D. 1 ¶ 4.

On January 30, 2017, Marcelino applied for a building permit to bring the new foundation up to code, tear down a partition that he built on the four-season deck and repair all other defects including a small opening from the old foundation to the new foundation. Id. ¶ 5. The Building Department denied the permit because "the newly constructed addition with a dug out cellar area . . . had been originally permitted as a deck only and the owner constructed a full addition and undermined the footings by digging out underneath" and because "the supplied drawings [did] not indicate the work to be performed." D. 12 at 27; see D. 1 ¶ 5. The Building Department required that Marcelino remove the addition "in its entirety as a condition of the issuance of any new permit." Id.

John C. Spinks ("Spinks"), a structural engineer, submitted a letter on December 29, 2016 stating that the Property could be repaired without being demolished. D. 1 ¶ 6. Spinks also submitted a report on March 1, 2017 stating that he had inspected the Property in the previous nine months and that some work had been completed to provide structural integrity. Id. As

Plaintiffs allege, the Building Department ignored both the letter and the report. Id. Another engineer, hired by the Building Department, did not suggest demolition and reported that the building could be repaired. Id. ¶ 21.

On November 7, 2017, the Board of Health notified Marcelino that he had not made the necessary repairs and that it intended to demolish the Property. Id. ¶ 8. The Board of Health's letter also indicated that it would be holding a public meeting on December 5, 2017. Id. Marcelino telephoned Casieri of the Building Department, who told Marcelino that he did not intend to give Marcelino a permit to make the repairs and that he would continue to deny Marcelino's permit applications unless the permit was to demolish the entire Property. Id. ¶ 9. Plaintiffs allege that there was a home located on 51 Sylvester Street in Brockton that had built a foundation without a permit and was out of code. Id. ¶ 23. The Building Department allowed that homeowner to bury the foundation rather than demolish the home. Id.

On December 4, 2017, Marcelino again applied for a permit to repair the Property. Id. ¶ 10. Marcelino attended the December 5 public meeting, where he indicated that he had applied for a second permit to repair the Property and that he was awaiting the Building Department's response. Id. ¶ 11. The Board of Health continued the meeting to January 2, 2018 and gave Marcelino until then to make the necessary repairs. Id. On December 12, 2017, the Building Department denied Marcelino's second permit application for the same reasons it denied his first application. D. 12 at 29; see D. 1 ¶¶ 8, 10. At the January 2 meeting, which Marcelino could not attend because he had the flu, the Board of Health determined that Marcelino had not made the necessary repairs and ordered the demolition of the Property. D. 1 ¶ 13.

On July 23, 2018, Marcelino conveyed the Property to himself as Trustee of the Mass Family Trust.  D. 12 at 46.  He then conveyed the Property to 600 Bedford Street LLC on October 18, 2018.  Id. at 49.

On January 7, 2019, Marcelino filed a suit in the Plymouth Housing Court seeking to enjoin the City from demolishing the Property and instead issue him a building permit to repair it.  D. 12 at 32–35; D. 1 ¶ 15.  Between January 2019 and April 2019, the housing court, considering "the significant and permanent nature of the demolition of a dwelling," restrained the City from demolishing the Property and granted Marcelino several extensions to obtain the required permits to complete the work himself or present a detailed plan to the court.  See D. 12 at 37–38.  Plaintiffs allege that each time the housing court extended Marcelino's deadline to obtain a permit, the Building Department offered a new reason for denying the permit.  D. 1 ¶ 18.  In February 2019, the Building Department denied a permit to demolish the four-season porch because the Building Department did not know the engineer that submitted the plan.  Id.  In March 2019, the Building Department denied the permit again.  Id.

On April 3, 2019, the housing court found that Marcelino's progress "did not include having secured any permits or begin[ning] the work necessary to bring the Property into compliance."  D. 12 at 38.  On April 8, 2019, the housing court ordered that if Marcelino failed by May 31, 2019 to obtain a permit, the City could proceed with demolishing the Property.  Id. at 39.  Following a May 30, 2019 hearing, the housing court denied Marcelino's emergency motion for reconsideration and stay of the court's April 8, 2019 Order.  Id. at 41.  On June 7, 2019, the Massachusetts Appeals Court denied Marcelino's petition appealing the housing court's May 30 decision.  Id.  On June 10, 2019, the City demolished the Property.  Id.

### IV.     Procedural History

Plaintiffs commenced this action on June 8, 2022, D. 1.  Plaintiffs assert claims for "violation of the [F]ourth [A]mendment rights, the abuse by a city official['s] power of authority and a perjury committed against [Marcelino] in a court of law."  D. 1 at 3.  Defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  D. 11.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 23.

### V.     Discussion

#### A.     Plaintiffs' Fourth Amendment Claim Is Time-Barred

Plaintiffs allege that a City of Brockton police officer violated their Fourth Amendment rights when he entered the Property on March 3, 2016 without a warrant.  D. 1 ¶ 3.  "There is no direct cause of action by an individual for a constitutional violation; rather, such a claim must be brought under 42 U.S.C. § 1983."  Tomaselli v. Beaulieu, 967 F. Supp. 2d 423, 433 n.3 (D. Mass. 2013) (citations omitted).  Reading the *pro se* complaint liberally, the Court construes Plaintiffs' Fourth Amendment claim against the unnamed officer, the City and the Brockton Police Department[2] as a 42 U.S.C. § 1983 claim for the purpose of resolving this motion.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (stating "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (citations and internal quotation marks omitted).

---

[2] To the extent that Plaintiffs allege any of their claims against the Brockton Police Department, those claims fail since the police department is not a suable entity.  Franklin v. City of Boston, 16-10484-FDS, 2016 WL 4534016, at *1 n.1 (D. Mass. Aug. 30, 2016) and cases cited.

Defendants argue that Plaintiffs' constitutional claim is untimely.  D. 12.  The Court agrees.  It is well settled that:

> Section 1983 does not contain a built-in statute of limitations.  Thus, a federal court called upon to adjudicate a [S]ection 1983 claim ordinarily must borrow the forum state's limitation period governing personal injury causes of action.  Massachusetts prescribes a three-year statute of limitations for personal injury actions.

Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (citations omitted).  Here, Plaintiffs' Section 1983 claim based on a warrantless search of the Property is time-barred by Massachusetts' three-year statute of limitations for personal injury actions.  See id.  The alleged search occurred on March 3, 2016.  D. 1 ¶ 3.  Plaintiffs commenced this action over six years later on June 8, 2022.  D. 1.

Accordingly, for at least this reason, the Court dismisses Plaintiffs' Fourth Amendment claim under Section 1983.

### B.     Plaintiffs Cannot State a Claim of Perjury

Plaintiffs allege that City attorney Bartlett "committed perjury in [t]he Brockton Housing Court during a hearing by saying that there were [two] kitchens in the [Property] when there was only [one]" and that "there were [fifteen] bedrooms when there were only [eight]."  D. 1 ¶ 22.  Defendants argue that Bartlett did not provide testimony in the underlying case, was performing her duties as Assistant City Solicitor and is entitled to absolute immunity.  D. 12 at 13.

"The two main federal statutes governing perjury are 18 U.S.C. § 1621 and 18 U.S.C. § 1623.  Section 1621 considers perjury generally, while [S]ection 1623 concerns false declarations in front of a grand jury or court."  Arroyo-Perez v. Demir Grp. Int'l, 762 F. Supp. 2d 371, 372 (D.P.R. 2011) (citing United States v. Dunnigan, 507 U.S. 87, 94 (1993)).  "Perjury is a criminal charge.  And even if perjury could be assumed *arguendo*, it is well established that

perjury does not give rise to civil liability." Id. at 373 (citing Droppleman v. Horsley, 372 F.2d 249, 250 (10th Cir. 1967); Liddell v. Smith, 345 F.2d 491, 494 (7th Cir. 1965)). Alternatively, even as alleged by Plaintiffs, Bartlett was performing her duties as the City attorney in housing court, she is entitled to absolute immunity. Vanderburgh House, LLC v. City of Worcester, 530 F. Supp. 3d 145, 158 (D. Mass. 2021) (noting that "[a]gency officials performing certain functions analogous to those of a prosecutor" are entitled absolute immunity in dismissing claim against assistant city solicitor).

Accordingly, the Court dismisses Plaintiffs' perjury claim.

**C.      Dismissal of Plaintiffs' Remaining State Law Claims**

Having determined that Plaintiffs' Fourth Amendment and perjury claims fail, and given that Plaintiffs' alleged basis for this Court's subject matter jurisdiction is the presence of a federal question, the Court need not retain supplemental jurisdiction over state law claims. See 28 U.S.C. §§ 1367(a) (providing that district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction"), 1367(c) (allowing that a district court "may decline to exercise supplemental jurisdiction over a claim if . . . (3) the district court has dismissed all claims over which it has original jurisdiction"). "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims." Lambert v. Fiorentini, 949 F.3d 22, 29 (1st Cir. 2020) (omission in original) (citation and internal quotation marks omitted). "Federal courts may retain jurisdiction in appropriate cases but, before doing so, must consider 'the interests of fairness, judicial economy, convenience, and comity,' the last of which is 'a particularly important concern in these cases.'" Id. (quoting Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998)). Given the early juncture in this case,

9

at the motion to dismiss stage, and the dismissal of all of the claims over which the Court has original jurisdiction and having make the appropriate considerations, particularly as to comity, the Court declines to exercise supplemental jurisdiction over the state law claims even as Defendants raise defenses (namely, res judicata) as to those claims.  D. 12 at 11-12; see Cohen v. Shea, 788 F. Supp. 66, 68 (D. Mass. 1992) (dismissing federal claims on res judicata based upon a final state court judgment, but dismissing state law claims only for lack of supplemental jurisdiction); see also Font de Santiago v. Burset, No. 11-2158, 2012 WL 12996195, at *10 & n.3 (D.P.R. Aug. 22, 2012) (declining supplemental jurisdiction over Commonwealth claims at the pleading stage even where defendants had raised res judicata as to those claims); Property Portfolio Grp., LLC v. Town of Derry, No. 08-cv-270-JD, 2008 WL 4951989, at *6 (D.N.H. Nov. 18, 2008) (declining supplemental jurisdiction and, therefore, not reaching defendants' res judicata argument as to plaintiff's state law claims).  Accordingly, Plaintiffs' state law claims are dismissed for lack of supplemental jurisdiction.

### VI.     Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss, D. 11, and dismisses the federal claims with prejudice and the state law claims without prejudice.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge